UNITED STATES of America,
Plaintiff–Appellee,

v.

Patrick RUGIERO (92–2412);
Ara Basmajian (92–2414),
Defendants–Appellants.

Nos. 92–2412, 92–2414.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1993.

Decided March 22, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied May 5, 1994
in No. 92–2412.*

Rehearing and Suggestion for Rehearing En
Banc Denied June 8, 1994
in No. 92–2414.*

* Judge Merritt would grant rehearing for the reasons stated in his dissent.

Richard Delonis, Kathleen Moro Nesi (argued and briefed), Asst. U.S. Attys., Detroit, MI, for plaintiff-appellee.

Domnick J. Sorise, Clinton Township, MI, N.C. Deday LaRene (argued and briefed), Detroit, MI, for defendant-appellant.

Before: MERRITT, Chief Judge; SUHRHEINRICH, Circuit Judge; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge, delivered the opinion of the court, in which SUHRHEINRICH, Circuit Judge, joined. MERRITT, Chief Judge (p. 1395), delivered a separate dissenting opinion.

WELLFORD, Senior Circuit Judge.

Two of a number of defendants charged in an indictment for conspiracy to possess and distribute cocaine and heroin (or other specific substantive dealing in these drugs), using and carrying a weapon in relation to their drug dealing and a crime of violence, and also for threatening a witness, now appeal their convictions. After an extended trial, Patrick Rugiero ("Rugiero") and Ara Basmajian ("Basmajian")[1] raise a number of issues. The district court denied motions for a new trial and then assessed substantial sentences against these two defendants, 804 F.Supp. 925.[2]

The government charged that beginning in 1985, in southeast Michigan, Rugiero was the leader of an armed drug distribution ring, and that Basmajian was one of the participants in the illegal group. Basmajian and his family owned and operated a party store in Dearborn Heights, allegedly used as a site to store and distribute drugs. Rugiero and his brother, Anthony, allegedly employed violent means, including threatened firearm use, to collect drug debts.

There was evidence of undercover drug contacts with defendants over a period of time, principally involving substantial quantities of cocaine. Others involved in drug transactions testified as to participation of defendants in distribution of both cocaine and heroin.

## I. ARA (ART) BASMAJIAN

Basmajian was charged with and convicted on two of the eight counts of the indictment, conspiracy to distribute drugs, and aiding and abetting one substantive heroin offense.

## A. JURY MISCONDUCT

Basmajian (and Rugiero) assert that a television report tying Rugiero's trial counsel to "organized crime" figures came to the attention of the jury during its deliberations prejudicing both defendants and necessitating a mistrial. The defendants brought their concerns promptly to the district court. The controversy centers, in part, around a note from the jury about the time it initially indicated a verdict had been reached.[3] The defendants requested an inquiry of the person who wrote the note. Very soon after sending the first note, the jury returned its verdict together with another note to this effect: "Disregard note. A unanimous decision has

---

1. We use the name as reflected in the indictment and in the defendant's brief. It is sometimes spelled "Basmadjian."

2. Anthony Rugiero, Patrick's brother, was found not guilty of the two counts charged against him; Patrick was also acquitted of one drug count, one weapon count, and the witness threatening count.

3. The note contained, among other things, the following comments:

Many stated they knew from the first day their verdict.

The verdicts were not based on impartial decisions by the majority of the jury."

I have not been paid off or threatened. Just had uneasy feelings the way this decisions [sic] were handled.

been reached." The district judge declined the request to make a juror inquiry at that time and accepted the guilty verdicts, now the subject of appeal, over the defendants' objections.

Despite his earlier indication, the trial judge then made separate individual inquiries of each juror about the television report regarding Rugiero's attorney. Most of the jurors indicated that they had seen or heard about the television report or reports. Some jurors indicated that the jury foreman, Mayhew, had discussed the television information about Rugiero's attorney with other jurors. Mayhew herself, however, denied knowledge of the television report or discussing this matter with other jurors. Each juror denied any adverse influence on their verdict, and the district court denied the motion for a mistrial.

■■■■ The standard to be applied in assessing the district court's actions in a case of alleged juror misconduct is whether the actions (or inactions) constituted an abuse of discretion under all the circumstances. *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986). This court has articulated four points to consider in cases of possible improper juror contact:

> Four points emerge from our decision in *Pennell:*[4] (1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the *"Remmer*[5] hearing" is not inherently suspect.

*United States v. Zelinka*, 862 F.2d 92, 95–96 (6th Cir.1988).

The district court in this case did conduct a hearing on the defendants' claims of jury

taint. The district court properly made no "presumption of prejudice" from juror exposure to the television news relating to Rugiero's attorney and required the defendants to prove "actual juror bias." The district court noted that it and the parties, through their counsel, "agreed that the appropriate course of action [after the television broadcast at issue] would be to defer any inquiry of the jurors" until conclusion of jury deliberations and a verdict. This agreed course of action was followed. The trial judge declined to inquire in great detail of the juror who wrote the notes "since the notes gave no indication either that any extraneous prejudicial information had been improperly brought to the jury's attention or that outside influence had been improperly brought to bear on any juror," citing Fed.R.Evid. 606(b).[6] *See also Shackelford, supra.* The district court heard "individual juror's testimony and viewed their assurances of continued impartiality to be credible," as it was entitled to do under *Pennell* and *Zelinka. See also United States v. Sturman*, 951 F.2d 1466, 1477–78 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992).[7]

■■■ Even if we assume that the jury foreman was exposed to the television broadcast and mentioned it or its content to other jurors, we find no abuse of discretion on the part of the district court here. We do not presume prejudice has occurred by reason of extraneous contact with a juror or jurors. Neither Basmajian nor his counsel were the subjects of any adverse information. Basmajian concedes in his brief that "juror testimony concerning the effect of the outside communication on the minds of the jurors is inadmissible," *Stockton v. Commonwealth of Virginia*, 852 F.2d 740, 744 (4th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), but argues that the district court should not have relied upon

---

**4.** *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985).

**5.** *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

**6.** The court also noted that the note writing juror who complained about jury deliberations "indi-

cated that her complaints ... were not motivated by concerns of any extraneous prejudicial information brought to the jury's attention or by any outside influence."

**7.** Two jurors during the inquiry apparently "spoke to the court of their admiration for the trial counsel."

"unsworn and unreliable denials of influence."

As to the defendant Basmajian, we are satisfied that there was no abuse of discretion nor error committed by the district court with respect to the alleged jury misconduct issue. We also conclude that Basmajian proved no actual bias against him on the part of the jury on this record, nor was "actual prejudice" demonstrated. *See United States v. Griffith*, 756 F.2d 1244, 1252 (6th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985) (defendant must demonstrate that juror communications resulted in actual prejudice).[8]

### B. SEVERANCE

■ The principal basis for Basmajian's motion for a separate trial was the existence of charges against two of his alleged co-conspirators, the Rugiero defendants, with respect to possession and/or use of firearms and intimidating and threatening a witness. We observe first that the jury acquitted the Rugiero brothers of both these charges. The jury was evidently able to separate the proof and evidence regarding the different defendants and different charges set out in the indictment. We believe that the district court was not in error in denying the defendant's severance motion. The counts against the three defendants, particularly the two appellants now before us, were "logically interrelated and involve[d] overlapping proof." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir.1987). We presume, unless the defendant carries a strong burden of showing to the contrary, that the jury is "capable of sorting out evidence and considering each count and each defendant separately." *Id.* at 323. The defendant has failed to show an abuse of discretion in denying him a separate trial. *See United States v. Warner*, 971 F.2d 1189 (6th Cir.1992); *United States v. Sivils*, 960 F.2d 587 (6th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992); *United States v. Gallo*, 763 F.2d 1504 (6th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986); *United*

*States v. Krebs*, 788 F.2d 1166 (6th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986).

### C. SINGLE OR MULTIPLE CONSPIRACIES

■ When the case was submitted to the jury, Basmajian had the opportunity to argue whether the proof, if any, of his part in any conspiracy to deal drugs indicated a separate conspiracy from that charged against him in the indictment. He did not request a jury instruction on multiple conspiracies. We consider this claim, therefore, only on a basis of plain and clearly prejudicial error. In respect to this issue, the defendant can prevail only if he shows that the evidence presented could "reasonably be construed *only* as supporting a finding of multiple conspiracies" rather than the conspiracy charged. *United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989) (emphasis added) (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir.1982)). *Rios* indicates further that a single conspiracy is not converted into multiple conspiracies merely because there may be some changes in persons involved or because they play different roles. *See also United States v. Bates*, 600 F.2d 505, 509 (5th Cir.1979). We believe the defendant has not prevailed in his burden to establish clear error and a fatal variance in this case.

■ Each member of a conspiracy need not be shown to know each other or to have direct association with all other conspirators. *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir.1991). The proof indicated that Basmajian knew of the existence of others in the charged drug conspiracy. *See United States v. Christian*, 786 F.2d 203, 211 (6th Cir.1986). Once the existence of a drug conspiracy, as charged, has been shown, proof of a formal agreement is unnecessary. A tacit or mutual understanding and a showing of knowing and active participation by a

---

8. The defendant cited *Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523 (6th Cir.1984), in support his argument. *Budoff* was a civil case and the panel presumed prejudice by reason of the direct con-

tact attempted by trial counsel's assistant to a juror. We deem *Budoff* distinguishable on its facts.

defendant in some act or portion of the conspiracy is all that is required. *United States v. Lee*, 991 F.2d 343, 347–48 (6th Cir.1993).

> The fact that a conspiracy can be divided into distinctive sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy.

*United States v. Warner*, 690 F.2d 545, 550 n. 8 (6th Cir.1982).

We find no merit in the claim of variance. The jury had sufficient evidence to decide whether Basmajian was simply a seller or whether he was a conspirator, or aider and abettor in distribution of illicit drugs.

### D. SENTENCE

■ Basmajian was found responsible for two kilograms of heroin by the sentencing judge, who noted that the evidence clearly showed that Basmajian was the source of this quantity being distributed by Rugiero. The district court also found evidence of this defendant's dealing in three kilograms of cocaine from at least two sources. The district court specifically overruled Basmajian's objections to the quantities of contraband attributed to him in the presentence report. We accept the findings of the district court in this respect unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). We find no error in attributing to Basmajian the entire two kilos of heroin negotiated for, although only one-half kilo was actually delivered to Basmajian's store.

Accordingly, we **AFFIRM** Basmajian's convictions and sentence in all respects.

## II. PATRICK RUGIERO

### A. JURY MISCONDUCT

■ As well might be expected, Rugiero attacks the failure of the district court to grant a mistrial on the jury misconduct issue discussed heretofore. Rugiero has a stronger basis for a challenge on this ground, although he was acquitted on three of the five counts with which he was charged in the superseding indictment, while Basmajian was convicted on both charges made against him.

Despite the fact that Rugiero's attorney was the specific subject of the adverse information contained in the television reports, we reach the same result on this issue. The jury evidently disregarded any information they may have heard about Rugiero's counsel—they acquitted Rugiero and and his brother Anthony on three counts.

### B. NON–SEQUESTRATION OF GOVERNMENT WITNESS MILEWSKI

The district court directed sequestration of witnesses upon this defendant's motion. During cross-examination of Thomas Wyman, who defendant describes as a "key government witness," Keith Milewski, who had been subpoenaed by the government, entered the courtroom and heard part of Wyman's testimony for some forty-five minutes. Over two weeks later, the government called Milewski as a witness and he was permitted to testify over Rugiero's objection.

■ The statutory purpose of the rule requiring sequestration of witnesses is to preclude coaching or the influencing of a witness' testimony by another witness. *United States v. Gibson*, 675 F.2d 825, 835 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). Although the government was permitted more than one law enforcement agent to be present in the courtroom, no one detected Milewski's courtroom presence until some time had elapsed. The defendant maintains that on May 21, Milewski indicated that he had no personal knowledge about the defendant's alleged drug operations.

■ The district court held that Milewski was not disqualified from testifying because: (1) the government did not consent, connive, procure Milewski's presence; (2) the government did not have active knowledge that Milewski was in the courtroom during a part of Wyman's cross-examination; and (3) the witness had no knowledge of Wyman or any matters relating to Wyman. The defendant

does not actually claim that the government permitted, encouraged, or approved of Milewski's coming into the courtroom. Rather, the defendant contends that because the government subpoenaed Milewski and instructed him to come to the courthouse during the trial, the district court should have held the government accountable for his going into the courtroom for a portion of a government witness' testimony and erred in not barring his testimony. It appears that Milewski initially denied knowledge of the defendant's drug activities, but upon his return after May 21, upon governmental urging and assurances of immunity, Milewski agreed to testify. While the government counsel may not have revealed all the details in arguing the defendant's motion to exclude Milewski's testimony, we are satisfied that the district court, under all the circumstances, in the absence of any government collusion, did not abuse its discretion in permitting him to testify despite his being in the courtroom during earlier testimony.

The fact that Milewski also spoke to co-defendant Jamil Ahmed, with the government's cooperation, while the latter was in the course of his testimony, presents a more difficult problem. Milewski indicated in his direct testimony that he had changed his mind about implicating himself and Rugiero in drug activities after talking to co-defendant Ahmed and speaking with his lawyer. We recite the pertinent portions of the government's brief in this regard:

The prosecutor explained that he had planned to have Milewski meet with Ahmed before Ahmed testified, but Milewski failed to appear. The prosecutor did not consider his actions to be a circumvention of the sequestration order. When Milewski finally showed up, the prosecutor planned to demonstrate to Milewski that he had a witness who could implicate Milewski in an effort to persuade Milewski to seek counsel before making any decisions. The prosecutor explained that he was pres-

ent during the discussion with Ahmed, and that the discussion did not include the fact that Ahmed had testified. . . . As he explained, "The representations made by Ahmed, while they were made after his testimony, could have been said the day before, the week before, the month before. There was no review of Ahmed's testimony."

* * * * *

Milewski's description of his meeting with Ahmed demonstrated that its purpose was not to inform Milewski of the testimony that had occurred in the trial, but to help him understand his potential criminal liability so as to encourage him to obtain legal counsel before making any decisions that might lead to perjury charges.

* * * * *

In the fifteen to twenty minute conversation with Ahmed, Ahmed reminded Milewski that they had met before. He then told Milewski "[Y]ou're in this now, the only way that you're going to get out of this is by telling them the truth, tell them what happened with you and Pat, and what happened with me and you." Ahmed told him to tell the truth or he cold [sic] get caught for perjury. . . . Milewski asked Ahmed if he had been caught with dope. Ahmed responded "no" and explained to him how conspiracy law worked. Milewski explained that prior to Ahmed's explanation he had believed he could not be charged unless he was actually caught with dope. At that point, Milewski asked for legal counsel, all questioning stopped, and the prosecutor instructed him on how to obtain free legal counsel.

* * * * *

Milewski understood Ahmed's statements to mean he had not yet testified [9] . . . Milewski admitted that but for the meeting with Ahmed, he probably would have perjured himself on the stand.

---

9. Defendant Rugiero alleges that Ahmed told Milewski "his 'name was brought up there' [at trial]." . . . The record, however, reflects that Milewski stated that defense counsel LaRene, not Ahmed, told him this:

Q. [MR. LARENE]: And also that this was the testimony that [Ahmed] either had given or was going to give in this trial?
A. [Milewski]: *You* told me that my name was brought up there.
Q. Well, no, no, no. Mr.—Mr. Milewski—

The government's arranging of a meeting between a prospective witness and a witness who was in the process of cross-examination risked a violation of the spirit, if not the letter, of the exclusion of the witness rule. The defendant moved for a mistrial by reason of these circumstances behind Milewski's testimony, claiming "an improper circumvention of Rule 615," and "a violation of the Court's order on sequestration."

After a hearing and some reflection, the district court made the following finding:

> The record seems now to be clear that—that Ahmed did not relate any of his testimony to Milewski. In fact, Milewski didn't even know that he had been a witness, but suspected or—or—speculated that perhaps he might be called, at a later point in the trial, to be a witness.
>
> So under those circumstances and in further light of the fact that there was no specific request made to, in this case, to bar a—a witness from discussing with another witness after he leaves the courtroom, his testimony—I don't think that's the major reason for my ruling, . . . .
>
> Basically, it is, however, a slight factor, but the major point in my ruling is that I—I don't find that Ahmed did relate to Milewski what his testimony had been in this case, and therefore, under those circumstances and on the basis that the case law that I—to which I have referred, I'm going to deny the defense motion in that regard.

■ We are not persuaded by the defendant's vigorous argument that because the government subpoenaed Milewski in, the government, by reason of that fact, triggered all the following problems involving the sequestration rule. Neither are we satisfied by the government's self-serving explanation and claimed justification for bringing Milewski and Ahmed into face-to-face contact. The government, to be sure, had a right to require Milewski's presence at the courthouse as one who purportedly had relevant information about the indictment charges and it had a right to discuss with him what

he knew about the alleged conspiracy and the defendants on trial. Bringing witnesses together in this fashion, especially without the court's consent, comes very close to a per se violation of this ancient and important rule of sequestration. But even if we count this as a violation, especially when coupled with Milewski's prior presence during another witness' testimony, "[t]he controlling principle in this Circuit is that violation of an order directing that witnesses be separated does not automatically bar a witness' testimony." *Gibson*, 675 F.2d at 835–36. During trial, the district court was fully apprised of the circumstances of Milewski's testimony and the government's part in, at least, a violation of the spirit of the sequestration rule and order. In order to grant a new trial, we must find that the district court not only abused its discretion, but also that the court's error was prejudicial to the defendant's receiving a fair trial. *Gibson*, 675 F.2d at 835–36. We are not persuaded that the defendants have established these requirements in light of the substantial other similar evidence, equivalent to Milewski's testimony, and the wide discretion given the district court in making such a ruling. *See United States v. McClure*, 734 F.2d 484, 495 (10th Cir.1984). Finally, we find no clear error in the factual determinations on this issue made by the district court, although we think it unnecessary, once the rule is invoked, that either party need ask the court to instruct each witness not to discuss his testimony with another witness yet to testify.[10]

Although this issue is a close one, we find no prejudicial error in the district court's rulings on Milewski's testimony.

## C. *CRAFT'S TESTIMONY ABOUT RUGIERO'S SEEKING TO KILL A FEDERAL AGENT*

■ Rugiero asserts error in permitting witness Nathaniel Craft to testify about a conversation in which he allegedly inquired whether Craft would "take out" a federal agent. Rugiero objects to Craft's being "im-

---

**10.** Attorneys know, without such construction, that witnesses who have testified when the sequestration rule is in effect should not discuss the substance of their testimony with a witness who has not yet given testimony. The rule is designed to prevent "tailoring testimony." *Gibson*, 675 F.2d at 836.

properly called before the grand jury" about this incident after Rugiero was indicted on the charges subject to this appeal. He also claims this post-indictment conversation violated his right to counsel and that such evidence was unduly and unfairly prejudicial. In essence, Rugiero claims that calling Craft before the grand jury was an abuse of its process because no new indictment followed this testimony, and this procedure was used improperly to "anchor the testimony of the witness." We find no error, under the circumstances, in the district court's finding that the government had a legitimate purpose in calling Craft before the grand jury. "So long as it is not the sole or dominant purpose of the grand jury to discover facts relating to a defendant's pending indictment, the Court may not interfere with a grand jury's investigation." *United States v. George*, 444 F.2d 310, 314 (6th Cir.1971). The burden is on Rugiero to demonstrate that there are in fact irregularities. "The law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises*, 498 U.S. 292, 300, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991). Craft did testify about pre-indictment matters, but he also gave substantial testimony about threats to a government agent after the indictment. We do not conclude that Rugiero has shown a wrongful "dominant purpose" in this regard.

The district court found that Rugiero had initiated the conversation with Craft and that the government had not arranged the meeting. While the testimony in question was doubtless prejudicial to Rugiero, we cannot say the district court was clearly in error or abused its discretion in admitting this evidence. The district court is granted considerable deference in deciding difficult Fed. R.Evid. 404(b) matters and weighing relevance versus undue prejudice. The jury did not convict Rugiero on the violence or weapon counts. We find this challenge also to be without merit under all the circumstances.

We have considered carefully all the contentions of the defendant Rugiero. As in the case of co-defendant Basmajian, we are not persuaded that any reversible error has been demonstrated.

We, accordingly, **AFFIRM** the respective convictions and sentences.

MERRITT, Chief Judge, dissenting.

I would reverse Rugiero's conviction because of the prosecutor's violation of the sequestration rule. The Court is right to suggest that the prosecutor obviously violated the rule by not keeping Milewski out of the courtroom while under subpoena to testify and by staging a confrontation and conversation between him and a witness who was testifying. The obvious purpose of this confrontation was to get Milewski to testify in a way that would be consistent with the testimony of the witness who was then on the stand. The witness on the stand told Milewski facts that the government wanted Milewski to testify to. Milewski then did so testify. This is too much of a violation to condone or to sweep under the "harmless error" rug. We are always reluctant, as we should be, to set aside a verdict on a technicality when it is fairly clear that the defendant is guilty and may have been convicted anyway. But if prosecutors know that in such circumstances we will always overlook egregious transgressions they will then have no incentive to play ball by the rules. The "war on drugs" of the last decade has emboldened many prosecutors to believe that they are immune from normal rules of procedure in criminal cases. In our zest to incarcerate, we are in danger of losing the rule of law. This is such an obvious and notorious violation in this case that I would reverse and remand for a new trial.