57 F.3d 1071
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John W. JONES, Defendant-Appellant.
 No. 94-3092.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1995.
 
 Before: NORRIS and SILER, Circuit Judges; and NEWBLATT, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant John W. Jones appeals his conviction of one count of conspiracy in violation of 18 U.S.C. Sec. 371; five counts of bribery in violation of 18 U.S.C. Sec. 666(a)(1)(B);[1] one count of bank fraud in violation of 18 U.S.C. Sec. 1344; and one count of bribing a bank officer in violation of 18 U.S.C. Sec. 215(a)(1).
 
 
 2
 The defendant's conviction resulted from activities which took place while he was the executive director of the Small Business Assistance Corporation (SBAC), a non-profit federally funded organization. Jones assisted a loan recipient, Robert L. Hauman, in obtaining a $500,000 loan from the Ohio Citizens Bank through a loan officer, Gary Martin. In turn, Hauman made five payments to Jones totalling $105,000, while Jones used proceeds of one of these payments to make a one-time payment to Martin of $10,000.[2] Jones asserts the following errors: (1) insufficiency of the evidence; (2) failure to instruct on multiple conspiracies; and (3) introduction of prejudicial evidence not related to the conspiracy. Based on reasons to follow, we affirm the appellant's convictions.
 
 I.
 A. Factual History
 
 3
 SBAC provided small businesses with direct loans and assisted them in obtaining financing from other sources, such as commercial banks. The purpose of the agency was to create jobs for low and moderate income persons in Toledo. The City of Toledo provided the principal funding for the agency through HUD Community Development Block Grants.
 
 
 4
 Businesses seeking financial assistance would apply for a HUD 108 loan with the SBAC. A HUD 108 loan would only be granted if the applicant used its business either to benefit low and moderate income persons or to eliminate slums. A HUD 108 loan application had to be approved in writing by HUD after being submitted to the HUD regional office, followed by submission to the national office in Washington, D.C.
 
 
 5
 Co-defendant Hauman was a developer in Toledo who applied for a HUD 108 loan with the SBAC. Hauman, doing business as Diversified Property Interest (DPI), sought the loan for a project known as Fort Industry Square. The loan application was presented to the SBAC Executive Committee by Jones and approved on October 28, 1986. This approval meant that the loan could continue to be processed for ultimate HUD approval. However, HUD approval was never obtained, and the application was never submitted to either the HUD regional or national office.
 
 
 6
 The following spring, Jones and Hauman applied to Ohio Citizens Bank (OCB) for a bridge loan of $500,000,[3] pending the payout of the purported HUD 108 loan. Co-defendant Gary Martin was the loan officer who was directed to ensure that HUD funds were on deposit for repayment and that SBAC could enter into the transaction. Ultimately, the bank approved the loan to SBAC, and, at Jones's direction, paid the proceeds directly to Hauman. Jones also signed two promissory notes for SBAC to repay the proceeds of the loan to OCB. The evidence, however, indicated that Jones misrepresented his authority to sign the promissory notes.[4] The bank's loan supervisor, Sam Gianino, testified that the bank would have never made the loan absent Jones's fraudulent misrepresentation.
 
 
 7
 The repayment period was extended ninety days after an October 28, 1987, meeting between Jones, Hauman, and Martin, based on the representation that the supposed HUD 108 funds were expected by the second week of December. As noted supra, no application for HUD 108 funding had been submitted to HUD.
 
 
 8
 Hauman made five payments to Jones in 1987, while Jones was the SBAC executive director. The first payment was $5,000 in February 1987, after Jones had obtained a resolution showing that the SBAC Board of Trustees had approved the Hauman/DPI application for a HUD 108 loan. Three payments occurred almost simultaneously with the three OCB disbursements to Hauman. On June 26, 1987, Hauman deposited the first disbursement ($250,000) into the Hauman/DPI checking account; on that same date, a $25,000 check payable to Jones and Associates (appellant's private consulting business) cleared the checking account. On July 20, 1987, Hauman deposited the second disbursement of $150,000 into his account; the next day, a $30,000 check to Jones and Associates cleared the account. On October 29, 1987, Hauman deposited the third disbursement of $100,000 into his account; one day later, a $30,000 check to Jones cleared Hauman's account.
 
 
 9
 Hauman also gave Jones a check for $15,000 in August 1987. Testimony of a bank representative revealed that Jones used $10,000 from that check to purchase a cashier's check for Gary Martin, the loan officer handling the Hauman/DPI loan.
 
 B. Procedural History
 
 10
 Jones and Hauman were each convicted of one count of conspiracy, seventeen counts of bribery,[5] and one count of bank fraud. Additionally, appellant Jones was convicted of one count of making a gift to a bank loan officer. Martin was acquitted of conspiracy, bank fraud, and receiving a bribe.
 
 
 11
 Jones and Hauman filed post-trial Rule 29 motions for judgments of acquittal, or, in the alternative, a new trial. The district court denied the motions with respect to all counts, except the twelve bribery payments made from 1988 to 1990--the years after Jones left the SBAC.[6]
 
 
 12
 On January 11, 1984, the district court sentenced Jones to five years imprisonment on count 1 (conspiracy), count 38 (bribing a bank officer), and count 79 (bank fraud); and eight years imprisonment on counts 4 through 8 (bribery), all concurrent. The court also ordered Jones and Hauman to pay restitution.
 
 II.
 
 13
 Jones argues that the evidence was insufficient to support his conviction of conspiracy to commit bribery or bank fraud. Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 14
 We find that the evidence was sufficient to convict Jones of the conspiracy to commit bribery and bank fraud. The record, viewed in a light most favorable to the government, reveals sufficient evidence that Jones was an active participant in a single conspiracy involving Hauman and Martin. The following is a litany of evidence supporting Jones's conspiracy conviction: (1) the actions of Jones, Hauman, and Martin directly involved the Hauman/DPI loan; (2) Jones was the SBAC officer involved in the Hauman/DPI loan; (3) Hauman was the recipient of the loan; (4) Martin was the OCB loan officer charged with the loan; (5) each of the co-defendants knew each other and had at least one meeting; (6) Martin wrote three memoranda to the SBAC loan file showing his active participation in the processing of the OCB loan to Hauman; (7) Martin's first two memoranda also provided a basis for a reasonable inference that he had at least talked with Jones and Hauman during the period of the first two memoranda; (8) Jones signed the promissory notes with OCB without authority; (9) Jones directed the loan proceeds to be paid directly to Hauman; and (10) Jones obtained an extension for the repayment of the bank loan by falsely representing that the HUD loan would be forthcoming in six weeks, when he knew that SBAC had not even applied for the HUD 108 funds.
 
 
 15
 The story, however, does not end there. The evidence also established that money was passing from Hauman to both Jones and Martin during the relevant period. While Jones was taking essential steps for Hauman, Hauman paid him $105,000. The first payment was for $5,000, and came after Jones fraudulently obtained a SBAC resolution indicating approval of the Hauman/DPI loan application. Three payments occurred almost simultaneously with the three OCB disbursements to Hauman: (a) $250,000 disbursement--$25,000 payment (10%); (b) $150,000 disbursement--$30,000 payment (20%); (c) $100,000 disbursement--$30,000 payment (30%).[7]
 
 
 16
 The evidence also revealed that some of the money passing from Hauman to Jones was passed on to Martin. For the fifth payment, Hauman/DPI issued a check for $15,000 to Jones. Jones subsequently endorsed the check and used the proceeds to purchase a cashier's check in the amount of $10,000 payable to Martin.
 
 
 17
 Viewing the evidence in the light most favorable to the government, we conclude that the evidence was such that any rational trier of fact could have found beyond a reasonable doubt that Jones agreed with Hauman and Martin to commit bribery and bank fraud as charged. Jackson v. Virginia, 443 U.S. at 319.
 
 III.
 
 18
 The defendant also argues that the evidence was insufficient to show a single conspiracy involving Martin because the jury acquitted Martin of any wrongdoing. The district court noted the apparent inconsistency of the jury's findings. However, the court ultimately held that inconsistent verdicts do not invalidate a conviction, citing a recent Sixth Circuit opinion stating:
 
 
 19
 the Supreme Court has repeatedly held that a jury may announce logically inconsistent verdicts in a criminal case. As Justice Holmes observed, inconsistent verdicts may result from compromise, mercy or any number of reasons. Dunn v. United States, 284 U.S. 390 (1932). Separate charges in an indictment should be treated like separate indictments, and since acquittal on a criminal charge would not constitute res judicata on any other charge in the indictment, courts should let inconsistent verdicts stand. Id. at 393.[8] In addition, this policy prevents judges from looking into the motivations behind jury verdicts. United States v. Powell, 469 U.S. 57 (1984) (conviction for compound crime upheld where defendant acquitted of predicate crime).
 
 
 20
 United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990).
 
 
 21
 The district court correctly ruled that the apparent inconsistency of the verdicts does not invalidate the conspiracy conviction. Accordingly, we hold that the evidence was sufficient to support the conspiracy convictions as charged.
 
 IV.
 
 22
 Next, the defendant argues that the district court erred by denying his request for jury instructions regarding multiple conspiracies.
 
 
 23
 The number of conspiracies is a factual question properly submitted to the jury, and
 
 
 24
 [t]he fact that a conspiracy can be divided into distinctive sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy.
 
 
 25
 United States v. Rugiero, 20 F.3d 1387, 1392 (6th Cir.) (citation omitted), cert. denied, 115 S.Ct. 208 (1994). "[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Warner, 690 F.2d 545, 549 (6th Cir.1982) (citation omitted). In light of these principles and the substantial evidence set forth supra, we hold that Jones was properly found to have been a knowing participant in a single conspiracy, the objects of which were to commit bank fraud and bribery.[9]
 
 
 26
 A fatal variance does not exist simply because the evidence might also have supported a conclusion that multiple conspiracies existed. United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991) (citation omitted). In order to obtain a reversal for failure to give a requested multiple-conspiracy charge, the defendant must show (1) evidence of separate networks operating independently of each other, and (2) substantial prejudice resulting from the failure to give the requested charge. United States v. Maldonado-Rivera, 922 F.2d 934, 962-963 (2d Cir.1990). "Substantial rights ... are affected only when a defendant shows 'prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.' " United States v. Zelinka, 862 F.2d 92, 97 (6th Cir.1988) (citations and internal quotations omitted). The defendant has failed to make a sufficient showing of either multiple conspiracy evidence or impairment of his substantial rights. Thus, the district court did not commit reversible error in denying the defendant's request for multiple conspiracy jury instructions. Accordingly, defendant's motion for a new trial on this ground was properly denied.
 
 V.
 
 27
 Finally, Jones argues that a new trial should have been granted because evidence was presented to the jury regarding payments from Hauman to Jones after the conspiracy's ending date.
 
 
 28
 The district court granted the defendant's motion for judgment of acquittal on twelve of the seventeen bribery counts (counts 9-20). Those bribery counts resulted from payments made by Hauman to Jones from 1988 to 1990--after Jones had left as SBAC executive director and after Hauman had received the $500,000 from the bank. The twelve payments also were overt acts identified in the conspiracy.
 
 
 29
 The district court issued an order striking the overt acts involving post-1987 payments and amending the conspiracy's ending date from January 23, 1990, to October 29, 1987.[10] In light of the count 1 conspiracy charge as limited, as well as the sufficient evidence of a single conspiracy, the district court denied the motions for judgment of acquittal, or in the alternative, for a new trial.
 
 
 30
 Jones specifically contends that a new trial should have been granted because "[the bribery counts for the post-1987 payments] were presented to the jury and more than likely played a large role in the jury's decision to convict [on the conspiracy count]." However, he has made no showing of prejudice based on the jury's consideration of the post-conspiracy payments. Any arguments of prejudice are undercut by the strong likelihood that evidence of the post-1987 payments would have been introduced either by the government, to show a common scheme, or by the defendants, to show legitimate outside business dealings. Moreover, the substantial evidence recounted supra strongly supports the verdict. Apart from the post-1987 bribery counts, the jury found that Jones was guilty of other charges. Where multiple overt acts are submitted to the jury, the conviction should be upheld as long as the evidence proves one of them. See Griffin v. United States, 502 U.S. 46 (1991). Accordingly, we uphold the district court's denial of the defendant's motion for a new trial.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Stewart Newblatt, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Convictions for twelve other bribery counts were dismissed by the court in a Fed.R.Crim.P. 29 order
 
 
 [2]
 Hauman and Martin were also tried with Jones. Hauman was convicted of bribery and bank fraud, and does not appeal. Martin was acquitted of all charges
 
 
 [3]
 A bridge loan is an interim, short-term loan with a specific source of identifiable repayment
 
 
 [4]
 SBAC's president, Stephen Stanahan, testified that SBAC Board of Trustees did not authorize Jones to sign for the loans. Moreover, the resolution which purported to give such authority to Jones listed the date of adoption as a date on which the board did not have a meeting
 
 
 [5]
 Although the jury found that Jones accepted seventeen bribe payments from Hauman, the judge later dismissed the twelve payments which occurred after Jones had resigned from SBAC
 
 
 [6]
 The result of that ruling is that the defendants were convicted only of pre-Sentencing Guidelines counts
 
 
 [7]
 The evidence also established numerous conflict of interest policies which put Jones on notice of the impropriety of accepting payments from a SBAC client
 
 
 [8]
 The res judicata rationale of Dunn has been rejected by the Supreme Court. This rejection, however, does not invalidate the rule of Dunn regarding inconsistent verdicts. See United States v. Powell, 469 U.S. 57, 64 (1984) ("We believe that the Dunn rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories.")
 
 
 [9]
 As noted in the previous section, the fact that Martin was acquitted of all charges does not invalidate the conspiracy conviction. See Clemmer, 918 F.2d at 573
 
 
 [10]
 The district court properly noted that limiting the scope and duration of the conspiracy, as opposed to expanding it, is not a violation of the Fifth Amendment. United States v. Miller, 471 U.S. 130, 144 (1985)