**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Brian Eugene CAMPBELL,**
**Defendant–Appellant.**

**No. 00–5200.**

United States Court of Appeals,
Sixth Circuit.

Sept. 4, 2001.

Before KEITH, SILER and CLAY, Circuit Judges.

SILER, Circuit Judge.

Defendant Brian Eugene Campbell appeals his conviction and sentence on two counts of carjacking in violation of 18 U.S.C. § 2119. For the reasons stated hereafter, we affirm.

## BACKGROUND

The offenses occurred in a short time-span in late 1998. On November 22, 1998, Kathy Wilson was a victim of a carjacking in Kingsport, Tennessee. The assailant made Wilson drive to a remote area, where she attempted to grab the knife that was being held at her throat, cutting her fingers and hand. She also received a stab wound in her side.

The assailant forced Wilson to perform oral sex and took her jewelry and cash. Wilson later jumped from the car as the assailant was driving and escaped. She was treated for lacerations to her hand and the stab wound. She suffers from lingering numbness in her hand. She stated that she suffers from nightmares associated with the attack, and physical problems with her hand and shoulder as a result of her jump from the car. Kingsport police officers found her car within 150 yards of Campbell's girlfriend's apartment.

On December 1, 1998, Charles Sexton was the victim of a carjacking in Johnson City, Tennessee. The assailant entered Sexton's vehicle while it was stopped at a red light, grabbed a pair of scissors from the car's seat and held them to Sexton's side. He took Sexton's jewelry and money. The assailant drove the car to Kingsport with Sexton, where the assailant left the car on foot.

Approximately a week later, Sexton traveled to Kingsport and picked Campbell's photo from a mug book that Wilson had previously viewed.[1] Johnson City police then provided another photograph of Campbell and used it in a photographic line-up from which Sexton also picked Campbell as the assailant. Wilson then viewed the same photographic line-up and identified Campbell as her assailant.

Campbell was indicted for both carjackings. The count involving Wilson alleged the elements of the crime including that Campbell had acted "with the intent to cause death and serious bodily harm and did cause serious bodily injury by cutting and stabbing such person."

At trial, both victims identified Campbell from the witness stand. Campbell's girlfriend, Dawn McKinney, testified that she lived in the apartment complex located within 150 yards of where the police had found Wilson's car. She also testified that she had pawned some jewelry for Campbell around November 22, 1998. She testified that Campbell would not tell her how he came into possession of the jewelry. The money from the pawn was spent on a trip to Johnson City, where Campbell and McKinney stayed at the Microtel Motel. McKinney testified that she had stayed with Campbell at the Microtel on November 23 and December 1, 1998. This testimony was corroborated by a front desk supervisor at the Microtel.

At sentencing, Campbell objected to a four-level increase to his offense level based upon Wilson's sustaining serious bodily injury. He also objected to a two-

---

1. Wilson was unable to identify Campbell from the mug book during her first viewing.

level increase that was based upon the offense involving carjacking. The district court adopted the findings of the presentence investigation report and sentenced Campbell to a term of 262 months on Count 1 (Wilson's carjacking) and 180 months concurrent on Count 2 (Sexton's carjacking) plus restitution and supervised release.

## DISCUSSION

### Sufficiency of the Evidence

■ No motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 was made before the district court. In order to preserve a sufficiency of the evidence claim for appellate review, the defendant must make such a motion. *See United States v. Horry,* 49 F.3d 1178, 1179 (6th Cir.1995). When a sufficiency claim is unpreserved, our review is limited to determining whether the record is "devoid of evidence pointing to guilt." *United States v. Price,* 134 F.3d 340, 350 (6th Cir.1998).

■ The government presented a substantial amount of circumstantial evidence linking Campbell to the carjackings. The proximity of Wilson's automobile to McKinney's apartment soon after the first carjacking, her testimony concerning the pawning of jewelry, and the testimony concerning Campbell's location on dates corresponding to the carjackings provided evidence linking Campbell to the crimes. The government also presented direct evidence from both victims who detailed the crimes and identified Campbell as the assailant.

It is important to note that Campbell does not argue that the use of the mug book or the photo line-up created constitutional issues; rather, he attacks the quality of the eyewitness identifications, in effect "asking this court to re-weigh the evi-

dence. This we cannot do." *United States v. Tipton,* 11 F.3d 602, 609 (6th Cir.1993).

■ Campbell was prosecuted under a version of 18 U.S.C. § 2119 that defines "serious bodily injury" by reference to 18 U.S.C. § 1365, which provides in relevant part that the term includes "protracted loss or impairment of the function of a bodily member." § 1365(g)(3)(D). Wilson testified that her hand remains numb and that the pain associated with the injuries to her shoulder that she sustained while escaping from Campbell have rendered her unable to work. This testimony supports a finding that she suffered a "serious bodily injury" as defined in § 1365(g)(3)(D). The record is not devoid of evidence pointing to guilt.

### Jury Instructions

■ "We review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir. 1991). "A ... refusal to deliver the requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *Id.*

■ Campbell requested that the district court include the following jury instruction as one of the essential elements of the crime of carjacking: "That the motor vehicles in question had previously crossed state lines while the subject of the buying and selling of goods."

The rejected jury instruction reflects the restrictive view of interstate commerce rejected in *United States v. McHenry,* 97

F.3d 125, 127 (6th Cir.1996), in that it requires proof that the automobiles moved in interstate commerce during, or as the object of, commercial activity. While this may be the case since the transport of these automobiles from their foreign points of manufacturer was undoubtedly for their sale, and while the *McHenry* court also held that the carjacking statute regulated activity that substantially affects interstate commerce, *see id.*, the rejected instruction was not a correct statement of law.

■ Campbell argues that the district court erred by failing to instruct the jury to disregard portions of witness testimony that his counsel objected to during trial. Campbell complains of the testimony of Kingsport police detective Cole, who stated "I was called to a report of a rape that had occurred in a vehicle," in response to the question "And can you describe to the jury what you were called for?" He also takes issue with the following testimony given by McKinney:

Q. Did Mr. Campbell ever make any reference to you, Ms. McKinney, of needing to get out of town? A. Yes.

Q. Okay. Do you remember the circumstances surrounding that comment?

A. Because he had violated his probation.

He believes that the reference to rape was made with the sole purpose of deliberately inflaming and prejudicing the jury. He argues that McKinney's statement created the impression to the jury that they were confronted with a convicted criminal, despite the fact that he had not put character in issue and had exercised his right to remain silent.

Campbell did not request a jury instruction related to this testimony. Therefore, we consider his argument under the plain error standard. *See United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir.1994).

McKinney's testimony regarding Campbell's need to leave town because he had violated probation is highly probative because the statement was made close in time to the carjackings and suggests that he had recently committed a crime. When Campbell's counsel objected to the testimony he stated: "Your honor, we object to that ... How is that germane to... How is that germane to this trial, a violation of probation or an alleged violation of probation?" This objection appears to question the relevance of the testimony and implies that the reference to probation was prejudicial.

■ The testimony was relevant to show that Campbell had committed the crime that was charged close in time to when the statement was made, an action that would violate his probation. Of course this evidence was prejudicial in that it implicated him in the carjackings, but its highly probative character supports its introduction. "Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir.1996) (citing *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir.1994)). Thus, plain error did not occur with regard to the district court's failure to *sua sponte* instruct the jury to disregard the testimony.

■ Detective Cole's statement that he had responded to a rape call did not implicate Campbell as a rapist, a suspected rapist or connect him to the scene to which Cole had been called. Cole was simply stating a fact that was relevant to his going to the scene and interacting with the victim. Moreover, Wilson later testified that Campbell had forced her to perform oral sex on him. This statement directly implicates Campbell in the same way he

argues Cole's statement impliedly implicated him. In light of Wilson's testimony, and the fact that Cole's testimony did not mention Campbell, even if the district court erred by not instructing the jury to disregard it, it cannot be said that the possible error "seriously affected the fairness, integrity or public reputation of judicial proceedings." Fed.R.Crim.P. 52(b).

### Sentencing

■ Campbell argues that he received a "double [sentencing] enhancement" because his sentence was enhanced for carjacking and for the occurrence of "serious bodily injury." He argues that these enhancements were impermissible because "carjacking is an essential element of carjacking" and because proof of "serious bodily injury" is an element of a conviction under § 2119(2), as stated in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). This argument is wholly without merit.

The 1998 version of the Sentencing Guidelines lacks a specific guideline for carjacking. USSG § 2B3.1, the guideline for robbery, lists 18 U.S.C. § 2119 as within its coverage. *See* § 2B3.1, Commentary, Statutory Provisions. USSG § 2B3.1(b)(5) increases the offense level for the specific offense characteristic of carjacking, and § 2B3.1(b)(3)(B) increases the offense level for the specific offense characteristic of causing serious bodily injury.

Campbell's argument simply contends that the sentencing guidelines could not be utilized in this case. The statutory maximum was twenty-five years under § 2119(2), and fifteen years under § 2119(1). Campbell's sentencing range under the guidelines was 210–262 months. He does not point to any instances of double counting; rather, he argues that since he was convicted of carjacking that

involved serious bodily injury on one count, he cannot be sentenced under the guidelines which specifically address that conduct. This approach is obviously flawed and without merit.

AFFIRMED.