UNITED STATES of America, Plaintiff,

v.

Patrick RUGIERO, and Ara Basmadjian, et al., Defendants.

No. 90–80941.

United States District Court, E.D. Michigan, S.D.

Oct. 16, 1992.

---

Stephen J. Markman, U.S. Atty., by Richard L. Delonis, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

N.C. Deday Larene, Detroit, Mich., William E. Bufalino, II, St. Clair Shores, Mich., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL

GADOLA, District Judge.

On June 19, 1992, defendant Patrick Rugiero was convicted by a jury of conspiracy to distribute, or possess with intent to distribute, cocaine and heroin. Also on June 19, 1992, and in the same proceeding, defendant Ara Basmadjian was convicted of conspiracy to distribute, or possess with intent to distribute cocaine and heroin, and of distribution of heroin.

On June 23, 1992, following further deliberations of the same jury within the same proceeding, defendant Patrick Rugiero was convicted of distribution of cocaine.

On June 23, 1992, the court issued a stipulation and order extending the time for filing a motion for new trial. On July 28, 1992, defendants filed this motion for new trial. On August 31, 1992, the government filed an answer to defendants' motion for new trial. Defendants Patrick Rugiero and Ara Basmadjian, on August 27, 1992 and September 4, 1992, respectively, filed motions for bond pending appeal of the issues raised in the defendants' motion for new trial.

### FACTS

On June 16, 1992, at the conclusion of a trial before a jury, this case was submitted to the jury for deliberations as to defendants Patrick Rugiero, Ara Basmadjian, and Anthony Rugiero. On the evening of June 17, 1992, certain local news broadcasts reported that one of defendant Patrick Rugiero's trial counsel was the subject of a federal criminal investigation. On the morning of June 18, 1992, the court and the parties met in chambers for the purpose of discussing how to proceed in light of the publicity. All agreed that the appropriate course of action would be to defer any inquiry of the jurors until such time that jury deliberations had been concluded and any verdicts had been reached.

At the conclusion of their deliberations on June 18, 1992, the jury reported to the court's clerk that it had reached verdicts. Because of the unavailability of the court and the parties, the jurors were excused for the day and directed to return the next morning.

On June 19, 1992, while en route from the jury assembly room to the court's jury room, a juror handed a court security officer a note containing comments critical of the deliberations and of certain verdicts. The note made no reference to the aforementioned publicity nor to any other extraneous occurrence having influenced the jury. Shortly after convening in the jury room, the jury sent the court a note indicating that it had reached its verdict. Moments later, another note, written by the same complaining juror who had written the first note, was received by the court. The juror asked that her first note be disregarded and confirmed that, in fact, a unanimous decision had been reached.

■ Defense counsel requested that the court, before taking any verdict, make an inquiry of the juror who wrote the notes, regarding the proceedings in the jury room which preceded the sending of the juror's notes. Pursuant to rule 606(b) of the Federal Rules of Evidence, the court denied this request for inquiry of the juror who wrote the notes, since the notes gave no indication either that any extraneous prejudicial information had been improperly brought to the jury's attention or that any outside influence had been improperly brought to bear upon any juror.[1] Rule 606(b) forbids inquiry of a juror regarding any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict, or concerning the juror's mental processes in connection therewith. A juror may neither testify to such matters nor may an affidavit or evidence of any statement of the juror concerning such matters be received. The only exceptions are, as above stated, evidence of extraneous prejudicial information brought to the jury's attention or outside influence improperly brought to bear upon a juror, and the juror's notes did not so reflect or so indicate. Further, the court had the opportunity, which was exercised, to subsequently make inquiry concerning those limited exceptions under Rule 606(b) after the verdicts were returned and during the polling

---

1. The note from the juror to the court appeared to refer to matters or statements which had occurred during the course of the jury's deliberations, i.e. that some jurors may have formed opinions in the early stages of the trial, or that jurors wanted to have "clean hands" at the conclusion of the deliberations, or wanted to bring their arguments to a close and "get it over with," or that some jurors may have given undue weight to another juror's notes, or that some verdicts were not based on "impartial decisions by a majority of the jury," or that some jurors were not convinced of the sufficiency of the government's proofs.

of the jury, which of course took place after verdicts were reported.

The jury then returned the following verdicts, as reported by its foreperson:

1) Defendant Anthony Rugiero was acquitted on Count V (Intimidating a Witness) and Count VI (Use and Carrying of a Firearm During a Crime of Violence);

2) Defendant Ara Basmadjian was found guilty on Count I (Conspiracy) and Count III (Distribution of Heroin);

3) Defendant Patrick Rugiero was found guilty on Count I (Conspiracy) but was acquitted on Count III (Distribution of Heroin), Count V (Intimidating a Witness) and Count VI (Use and Carrying of a Firearm During a Crime of Violence).

The foreperson also reported a verdict of guilty as to Patrick Rugiero on Count II (Distribution of Cocaine).

The court then proceeded to poll each juror individually and out of the hearing of the other jurors, as to the reported verdicts. The court asked each juror whether he or she had been exposed to the publicity of June 17, 1992, regarding Patrick Rugiero's trial counsel. Many jurors acknowledged having seen or heard of the publicity, but each juror advised the court that the publicity had had no influence upon his or her decision; in fact, two jurors even expressed admiration for the trial counsel who had been the subject of the publicity. The juror who had written the note to the court complaining about the jury's deliberations and the note retracting this complaint, indicated that her complaints about the jury's deliberations were not motivated by concerns of any extraneous prejudicial information brought to the jury's attention or by any outside influence improperly brought to bear upon any juror; she further stated that she had not been influenced in her decision by the publicity regarding defendant Patrick Rugiero's counsel.

The poll of the jurors did indicate, however, that the verdict as to Patrick Rugiero on Count II was not unanimous, and the court therefore did not receive a verdict on that count. The jury was excused for the

day and directed to return on Monday, June 22, 1992, to continue deliberations as to Count II.

On June 23, 1992, the jury returned a verdict of guilty on Count II as to defendant Patrick Rugiero. A poll of the jury disclosed that the verdict was unanimous, and the jurors were discharged.

On July 28, 1992, as noted above, the defendants filed a motion for a new trial on grounds that the jury was prejudiced by the news reports or by other extraneous forces which allegedly were alluded to in the complaining juror's note to the court.

### STANDARD OF REVIEW

■ Rule 33 of the Federal Rules of Criminal Procedure provides in pertinent part that on motion of a defendant the court may grant a new trial "if required in the interest of justice." Decisions on motions for new trial are within the sound discretion of the trial judge. *Burks v. Egeler*, 512 F.2d 221, 224 (6th Cir.1975), *cert. denied*, 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975). Motions for new trial are not favored and should be granted only with great caution and in the most extraordinary of circumstances. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir.1976), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1986) and 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124.

### ANALYSIS

In defendants' motion for new trial, defendants make two arguments: 1) that the jury possibly was prejudicially influenced by television news reports which were broadcast during the jury's deliberations and that such prejudicial influence possibly resulted in actual bias against the defendant on the part of the jury, and 2) that a note from a juror to the court indicated that members of the jury possibly were being influenced by forces extraneous to the jury's deliberations and that such forces possibly caused actual bias. The court disagrees with both of defendants' arguments.

## I.

■ The remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias. *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 944–45, 71 L.Ed.2d 78 (1982). The defendant has the burden of proving that any unauthorized communication with jurors resulted in actual juror bias. *United States v. Pennell,* 737 F.2d 521, 532 (6th Cir.1984).

■ In the case at hand, the defendants' concerns that the jury may have been exposed to unfavorable publicity as to one of defendant Patrick Rugiero's trial counsel, were brought to the attention of the court prior to the jury returning a verdict. The court immediately responded to defendants' concerns by holding a meeting in chambers between the court and the parties, wherein it was agreed that the jurors were to be questioned regarding their exposure to the publicity, if any, after verdicts had been reached. Consequently, when the jury returned with its verdicts, the jurors were questioned by the court as to whether they had seen or heard of the publicity. All jurors indicated either that they had seen the publicity but had not been influenced by it, or that they had not seen it. In fact, as noted above, two of the jurors spoke to the court of their admiration for the trial counsel in question.

The court finds that the questioning of the jurors as to the effect, if any, of the publicity was sufficient to satisfy the requirement that a hearing be held when a defendant alleges juror bias. The court questioned the jurors at the time of trial and discovered nothing in their answers that would indicate bias. Defendants' motion for new trial presents no new factual issues to be considered in a hearing.

■ Where a district court views juror assurances of continued impartiality to be credible, the court is entitled to rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice. *United States v. Pennell,* 737 F.2d at 533. In the case at hand, the court finds, as it did at the time of questioning the jurors, that the jurors' an-

swers are sufficient to satisfy the court that no juror bias resulted from the publicity on defendant Patrick Rugiero's trial counsel.

The fact that the publicity did not pertain to the defendants' case itself, either directly or indirectly, but rather related to extraneous matters involving one of defendant Patrick Rugiero's trial counsel is further evidence of the propriety of relying upon the credibility of the jurors' assurances. In *United States v. Porcaro,* 648 F.2d 753, 757 (1st Cir.1981), the court established a three pronged test to determine whether a trial jury had been prejudiced by publicity: 1) was the publicity of a prejudicial nature?; 2) if so, were any of the jurors exposed to the news coverage?; and 3) if exposure occurred, did it affect the jury's impartiality? Defining "prejudicial" in this context, the First Circuit, in a case subsequent to its *Porcaro* decision, considered important the fact that the jurors were not exposed to any substantive information on the issues at trial or on the defendants' guilt with respect to the charges against them. *United States v. Angiulo,* 897 F.2d 1169, 1186 (1st Cir.1990). *See also, United States v. Gaggi,* 811 F.2d 47, 52 (2d Cir. 1987). Thus, the fact that the publicity was not related to any issue at trial in defendants' case combined with the jurors' assurances that no influence or actual bias resulted from the publicity leads the court to conclude that the jury was not made biased by the publicity.

## II.

Defendants' second argument is that a note submitted by a juror indicated that the jurors were being influenced by extraneous forces. The court disagrees. The contents of the note were as follows:

> Many stated they knew from the first day their verdict. Judge Gadola I totally disagree with count 2 verdict for first defendant. The verdicts were not based on impartial decisions by the majority of the jury. Many focused there [sic] decisions on the fact that whether they will walk away with their hands clean or not. Based on one person's notes not their

own. Several had the feeling that the government didn't present a sufficient case to convict either of them. Many went along with the majority to keep down arguments. Many stated this is bullshit we don't want to be jurors any longer. Let's just get it over with. I have not been paid off or threatened. Just had uneasy feelings the way this decisions [sic] were handled. A new jury should be picked.

The note makes no reference to any extraneous factors influencing the jury in its deliberations.[2] Rule 606(b) of the Federal Rules of Evidence makes it clear that the jury's deliberations are not to be investigated or questioned so long as no extraneous prejudicial information or outside influence was brought to bear upon any juror. Furthermore, the author of the note later asked that the note be disregarded. Additionally, as above set forth, the juror was questioned individually during polling, as was each juror, and did not indicate that either the television news item concerning defendant Patrick Rugiero's counsel or any extraneous prejudicial information or any outside influence had been brought to bear upon herself or had caused any prejudice or bias or had any effect whatsoever upon the jury's deliberations. All the jurors, when questioned individually and out of the hearing of one another, concurred.

Defense counsel have urged that the Sixth Circuit Court of Appeals, in *U.S. v. Pennell*, 737 F.2d 521, 531–533 (6th Cir. 1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985) was in error in ruling that the United States Supreme Court in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) had reinterpreted *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)[3] now holding that where it is shown that a jury was exposed to extraneous information, the burden of proof is on the defendant to demonstrate actual juror partiality. This court disagrees with defendants' contentions and observes that the Sixth Circuit has reaffirmed its ruling in *Pennell* in such subsequent cases as *United States v. Zelinka*, 862 F.2d 92, 95–96 (6th Cir.1988).

■ The burden of proof is indeed on the defendant to demonstrate actual juror bias or prejudice from extraneous prejudicial information, or improper outside influence.

■ But even if it be assumed that there is a presumption of such resultant bias or prejudice, with the government having the burden to overcome the presumption, in this case the ruling necessarily would be that the government had even met that burden. The juror who sent the note, and all jurors, were closely questioned, individually and out of the hearing of fellow jurors, and all of them attested that no extraneous information had influenced their deliberations or verdicts. Further, all confirmed that no improper outside influence had been brought to bear upon any of them.

Defendants were given the opportunity, at the hearing held October 6, 1992, to produce testimony from the juror who submitted the notes, or from any other jurors, to support their claim that either any extraneous prejudicial information had been improperly brought to the jury's attention or that any outside influence had been improperly brought to bear upon any juror, thereby resulting in bias against the defendants. Defendants have produced no such testimony nor any supporting affidavits nor any evidence whatsoever of any such bias or prejudice to the defendants and defense counsel, on October 6, 1992, advised the court that they did not propose to submit any such testimony or evidence on the limited matters on which such testimony or evidence is permitted under Fed.R.Evid. 606(b). They rely instead only on speculation and conjecture, as to the jury's deliber-

---

**2.** In fact, the claim that many knew from the first day what their decisions would be undermines defendants' claim that the jurors were influenced and actually biased by news reports that did not occur until the jury's second day of deliberations.

**3.** *United States v. Remmer* was again reviewed by the Supreme Court at 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956), in which the original conclusion was again enunciated.

ations, and upon matters barred by Fed. R.Evid. 606(b), and have entirely failed to meet their burden of proving any actual juror bias whatsoever.

The court finds therefore that the juror's note, unsupported by any evidence whatsoever, created no issue as to whether extraneous forces acted upon the jury to cause any actual bias.

### ORDER

Therefore, it is hereby ORDERED that defendants' motion for a new trial is DENIED.

SO ORDERED.