Patrick RUGIERO, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, and United States Department of Treasury, Defendants.**

No. CIV.97–40520.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 8, 2002.

David Schoen, Montgomery, AL, for plaintiff.

Charles H. Keen, U.S. Dept. of Justice, Tax Division, Washington, DC, William L. Woodard, U.S. Attorney's Office, Detroit, MI, for defendants.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court is the Government's Supplemental Motion for Summary Judgment. Plaintiff filed a timely Response, and the Government filed a timely Reply Brief. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court shall grant the Motion in part and deny the Motion in part.

## I. BACKGROUND

This is a Freedom of Information Act ("FOIA") case that evolved out of Plaintiff's 1992 conviction, by a jury of his peers, for distributing cocaine and conspiring to distribute, or possess with intent to distribute, cocaine and heroin. *See United States v. Rugiero*, 804 F.Supp. 925, 928 (E.D.Mich.1992) (Gadola, J.). The jury also returned a verdict of not guilty to charges of distributing heroin, intimidating a witness, and using a firearm during a violent crime. *See id.*

Thereafter in 1996, Plaintiff filed a motion, pursuant to 28 U.S.C. § 2255, attacking his sentence that resulted from his conviction. Plaintiff's § 2255 case is current pending, and discovery is proceeding before United States Magistrate Judge Steven D. Pepe. *See United States v. Rugiero*, 804 F.Supp. 925 (E.D.Mich.1992) (Gadola, J.).

Displeased with the Government's conduct and the progress of discovery in his § 2255 case, Plaintiff filed the present civil action under FOIA, 5 U.S.C. § 552, in 1997 as an alternate means of obtaining information necessary to prosecute his § 2255 case. Plaintiff's FOIA complaint involved eleven counts, nine of which have already been resolved. *See Rugiero v. United States Dep't of Justice*, 35 F.Supp.2d 977 (E.D.Mich.1998); *Rugiero v. United States Dep't of Justice*, No. 97–40520, 1999 U.S. Dist. LEXIS 4528, at *1 (E.D.Mich. Mar. 9, 1999); *Rugiero v. United States Dep't of Justice*, 257 F.3d 534 (6th Cir.2001).

The Sixth Circuit has remanded this case for further proceedings on the two remaining counts, which concern two component agencies of the United States Department of Justice. *See Rugiero*, 257 F.3d at 551–54. Count IV involves the Executive Office of the United States Attorneys ("EOUSA"), and Count XI involves the Drug Enforcement Administration ("DEA"). The Sixth Circuit's instructions on remand are clear; this Court is to address two questions:

> [W]e affirm the judgment of the district court in substantial part, reverse in part, and remand for further proceedings (1) *to apply the "confidentiality" standard under [5 U.S.C. § ] 552(b)(7)(D) to documents the DEA withheld in Count XI;* and (2) *to determine the segregability of documents withheld in their entirety by the DEA and the EOUSA, excluding the 821 pages of grand jury materials* withheld pursuant to Rule 6(e) [of the Federal Rules of Criminal Procedure] by the latter. On remand, the district court has available all of the tools normally available in FOIA actions to ensure agency compliance with disclosure obligations under the Act.

*Id.* at 554.

In response to the remand order, the Court held a status conference on February 25, 2002, and the parties agreed to a briefing schedule that resulted in the filing of the Government's present Motion.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plain-

tiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

The Government's Motion presents two issues, which track the Sixth Circuit's remand instructions. The first issue presented is whether summary judgment should be granted relative to Count XI because the DEA properly withheld confidential source information pursuant to 5 U.S.C. § 552(b)(7)(D). For the reasons set forth below, the Court shall grant summary judgment on this issue presented.

The second issue presented is whether summary judgment should be granted relative to Counts IV and XI because the EOUSA and the DEA have met their burden with respect to showing non-segregability of the withheld documents. For the reasons set forth below, the Court shall deny summary judgment on this issue presented.

### A. Confidential Source Information

The Sixth Circuit held that the Government properly applied FOIA in exempting certain information from disclosure, pursuant to 5 U.S.C. § 552(b), in all but one situation. That situation was the DEA's application of the FOIA exemption in § 552(b)(7)(D). This FOIA exemption allows the Government to elect to not to disclose

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

could reasonably be expected to disclose the identity of a *confidential source.*

5 U.S.C. § 552(b)(7)(D) (emphasis added).

■■■■ The Sixth Circuit set forth the DEA's approach and deficiencies as follows:

> In applying the exception in [§ ] 552(b)(7)(D), ... the DEA's affidavit indicates that the agency withheld information on two types of informants: (1) those assigned an internal "Cooperating Individual Code" after receiving express assurances of confidentiality; and (2) those who received implied assurances of confidentiality pursuant to agency policy, which treats the "circumstances of the interview itself [as] creating an atmosphere in which a promise of confidentiality is understood."
>
> Pursuant to [*United States Dep't of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) ], the agency properly withheld information on those who received express assurances of confidentiality. In contrast, the affidavit indicates that the DEA has adopted a blanket rule that any informant who has not received an express assurance of confidentiality will be treated as having received an implied promise of confidentiality. *Landano* does not countenance such a uniform policy, requiring instead that the agency assess confidentiality based on the particular circumstances applicable to each source.
>
> Accordingly, the DEA has applied an incorrect standard to confidential informants falling in the second category identified in its affidavit. The DEA's *Vaughn* index [1] fails to distinguish between these types of confidential

---

**1.** A *"Vaughn index"* is a routine FOIA-litigation device in which an agency describes the documents responsive to an FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to

make an independent assessment of the agency's claims for FOIA exemptions. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973); *see also Rugiero,* 257 F.3d at 544.

sources, necessitating review of all documents the DEA has withheld in full or in part based on this exception. On remand, the district court should take whatever measures it deems appropriate to ensure that the DEA has complied with *Landano* in responding to [Plaintiff's] FOIA request, taking into account that a "bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient." *Billington v. United States Dep't of Justice*, 233 F.3d 581, 584 (D.C.Cir.2000) (citing *Campbell [v. United States Dep't of Justice*, 164 F.3d 20, 30 (D.C.Cir.1998)]). The DEA cannot rely on conclusory assertions of compliance with *Landano*. Rather, the agency must provide assurances that sources in fact received promises of confidentiality before withholding information under [§ ] 552(b)(7)(D).

*Rugiero*, 257 F.3d at 552.

In summary, the Sixth Circuit held that the DEA failed to clearly identify which informants were given express assurances of confidentiality and how such assurances were given; further, the DEA also failed to apply the correct standard to informants receiving implied assurances of confidentiality by adopting a blanket rule that any informant who has not received an express assurance of confidentiality will be treated as having received an implied assurance of confidentiality. *See id.*

The DEA cured these shortcomings through the affidavit of Leila J. Wassom, a Paralegal Specialist of the DEA's Freedom of Information Section. The affidavit addressed the first concern of the Sixth Circuit by clearly delineating between those informants who received an express assurance of confidentiality and those who received an implied assurance of confiden-

tiality. It also explained how express assurances were given to informants.

Paragraph 5 of the affidavit states that the DEA's "coded informants" received express assurances of confidentiality by virtue of the DEA's policies and procedures:

Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. *They are assigned an identification code which is used in place of their name* or referred to as CI (Cooperating Individual). An individual assigned a CI code has necessarily been given an express assurance of confidentiality, because written DEA policy requires that all coded informants be given such assurances. Pursuant to the DEA Agents Manual, coded informants shall be advised at the outset that ... information they provide may be used in a criminal proceeding, and that, although the DEA will use all lawful means to protect their confidentiality this cannot be guaranteed.

Wassom Aff. at ¶ 5 (emphasis added) (citation omitted). Such procedures, especially the practice of assigning a code to such individuals to replace their names in order to protect their confidentiality, are sufficient proof that the DEA's coded informants were given express assurances of confidentiality. *See Campbell*, 164 F.3d at 34 ("evidence [of express assurances of confidentiality] can take a wide variety of forms, including ... *contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources*." (emphasis added)); *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1062 (3d Cir.1995) (to utilize the FOIA "exception for express promises of

confidentiality, [the Government] must produce evidence of its alleged policy and practice of giving all symbol numbered informants or code name sources express assurances of confidentiality"); *Manna v. United States Dep't of Justice,* 51 F.3d 1158, 1167 (3d Cir.1995) (rejecting an FOIA requester's argument that sources should not be considered confidential merely because they had been *assigned numbers* and that the Government should have established that each source specifically furnished information with the understanding that the communication would not be divulged).

Furthermore, Ms. Wassom specifically identifies which of the DEA documents contain references to coded informants, and thereby, distinguishes information pertaining to informants who received an express assurance of confidentiality from those who received an implied assurance of confidentiality. Ms. Wassom identifies those receiving express assurances of confidentiality in paragraphs 23, 34, 47, 79, 83–87, 98–99, 108–13, 117, 125–26, and 130–35 of her affidavit. Therefore, Ms. Wassom's affidavit satisfies the Sixth Circuit's concern about express assurances of confidentiality and which informants received such express assurances. Thus, the DEA may properly exempt this information from disclosure under § 552(b)(7)(D).

Likewise, Ms. Wassom's affidavit also cures the second concern identified by the Sixth Circuit regarding the § 552(b)(7)(D) exception and implied assurances of confidentiality. Paragraphs 7 and 8 of the affidavit make clear that the remaining sources who were not given express assurances of confidentiality received implied assurances of confidentiality by virtue of the nature of the crimes being investigated and their relationship to Plaintiff and these crimes. Specifically, Ms. Wassom points out that Plaintiff was characterized as the head of a large scale narcotic trafficking organization. *See* Wassom Aff. at ¶ 8. Morever, Plaintiff was convicted of distributing cocaine and conspiring to distribute, or possess with intent to distribute, cocaine and heroin. *See id.* The Court additionally notes that the grand jury indicted Plaintiff on charges of intimidating a witness and using a firearm during a violent crime. *See Rugiero,* 804 F.Supp. at 928. Therefore, "[i]t is reasonable to infer that the individuals who provided information about [Plaintiff] would fear for their safety if their identities or the information they provided was revealed." *See* Wassom Aff. at ¶ 8.

Contrary to Plaintiff's argument in his Response, *see* Pl. Resp. Br. at 4–5, the showing of circumstances surrounding the crimes being investigated is sufficient proof to establish that the informants who provided information on such crimes received implied assurances of confidentiality. In *Landano,* the Supreme Court stated that certain "generic circumstances [may exist] in which an implied assurance of confidentiality fairly can be inferred" and that the Government could make a sufficient showing of confidentiality for § 552(b)(7)(D) purposes on a "generic" basis when "certain circumstances *characteristically* support an inference of confidentiality." 508 U.S. at 177, 179, 113 S.Ct. 2014 (emphasis added).

Such an inference of confidentiality can be found in situations involving investigations of narcotics trafficking and conspiracies involving narcotics trafficking. For example, in *Mays v. Drug Enforcement Administration,* the District of Columbia Circuit held that a source providing information about cocaine trafficking conspiracies "most assuredly" received implied assurances of confidentiality. 234 F.3d 1324, 1329 (D.C.Cir.2000). The *Mays* case is strikingly similar to this case: the District

of Columbia Circuit upheld the district court's decision that implied assurances of confidentiality existed base on an affidavit of Ms. Wassom concerning an investigation of a cocaine trafficking conspiracy. *See id.* at 1326–27. The District of Columbia Circuit's rationale and holding are highly persuasive here:

> In this case the cooperating individual supplied information about a conspiracy to distribute crack and powder cocaine. *The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source.* They most assuredly do.

> This court knows all too well the violence and danger that accompany the cocaine trade. *See United States v. Payne,* 805 F.2d 1062, 1065 ( [D.C.Cir.] 1986) (firearms "are as much tools of the [drug] trade as more commonly recognized drug paraphernalia"); *Navegar, Inc. v. United States,* 192 F.3d 1050, 1058 ( [D.C.Cir.] 1999) (Congressional Record establishes "disproportionate link between [assault] weapons and drug-trafficking and violent crime"); *United States v. Holland,* 810 F.2d 1215, 1219 ( [D.C.Cir.] 1987) (drug transactions "contribute directly to the violent and dangerous milieu that Congress sought to eliminate"). Indeed, for the same reasons that an informant would justifiably fear reprisal from a murderous street gang [2] and expect the authorities to keep his information confidential, so too would an informant reasonably fear reprisal by conspirators to distribute cocaine; the two types of criminal enterprises are closely comparable in terms of their organization and their penchant for violence. *See U.S. Sen-*

tencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 4 (1997) (trafficking in crack cocaine closely associated with "systemic crime ... particularly the type of violent street crime so often connected with gangs, guns, serious injury, and death"); U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 95–98 (1995) (chronicles empirics of violent crime, including "elimination of informers," that attends trafficking in crack and powder cocaine).

> Indeed, our notion of what is reasonable police conduct has long reflected the heightened danger and risk of violence posed by cocaine trafficking. *See United States v. Bonner,* 874 F.2d 822, 827 ( [D.C.Cir.] 1989) (police justified in breaking down door in part because "entrance into a situs of [cocaine] trafficking carries all too real dangers to law enforcement"); *United States v. White,* 648 F.2d 29, 35 n. 29 ( [D.C.Cir.] 1981) (study of drugs and violence justifies police drawing weapons because "odds [are] too high to require policemen to play 'russian roulette' each time they effect a drug arrest"). *Surely we must extend the same consideration to informants when they help a law enforcement agency combat this type of crime. To expose them to the real potential of retaliation at the hands of cocaine traffickers would be not only incongruous but also perverse.*

*Mays,* 234 F.3d at 1329–30 (emphasis added). The United States District Court for the Western District of Texas, also relying on an affidavit from Ms. Wassom in a cocaine trafficking conspiracy, similarly held:

> willing to speak to the [Federal] Bureau [of Investigations] except on the condition of confidentiality." 508 U.S. at 179, 113 S.Ct. 2014.

---

**2.** This is a reference to *Landano,* which stated: "Most people would think that witnesses to a gang-related murder likely would be un-

The situation presented here is of the kind envisioned by the Supreme Court in *Landano* when it held that certain circumstances characteristically support an inference of confidentiality, permitting the Government to claim exemption 7(D) without the need to detail the circumstances surrounding a particular interview. With billions of dollars at stake, it is no secret that drug traffickers are not above using brutal violence to silence those who have turned against them. *It goes without saying that an individual who informs on drug runners for the federal government has a tremendous expectation that his or her identity not be made public for fear of reprisal.* Accordingly, the court concludes that the DEA properly asserted exemption 7(D). Those documents, or portions of those documents, designated as exempt from disclosure under 7(D) should not be disclosed.

*McNamera v. United States Dep't of Justice,* 974 F.Supp. 946, 961–63 (W.D.Tex. 1997) (emphasis added). *See also Engelking v. Drug Enforcement Admin.,* 119 F.3d 980, 981 (D.C.Cir.1997); *Perrone v. Fed. Bureau of Investigation,* 908 F.Supp. 24, 27 (D.D.C.1995)("The crimes at issue here—drug trafficking, extortion and illegal possession of firearms—are of such a serious and potentially violent nature that a cooperating source reasonably could expect to be treated as confidential."); *Delviscovo v. Fed. Bureau of Investigation,* 903 F.Supp. 1, 3 (D.D.C.1995); *Badalamenti v. United States Dep't of State,* 899 F.Supp. 542, 550 (D.Kan.1995) ("An inference of confidentiality is established under these circumstances which include efforts to combat international drug trafficking, an arena where confidentiality is implicitly understood.").

Ms. Wassom's affidavit establishes that implied assurances of confidentiality existed here because the information given by the DEA's informants related to crimes that inherently involve violence and risk of retaliation. This holding is supported not only by Plaintiff's convictions for distributing of cocaine and conspiring to traffic cocaine and heroin, but also by the other crimes involved in the indictment, especially intimidating a witness and using a firearm during a violent crime. Although Plaintiff was found not guilty of intimidating a witness and using a firearm during a violent crime, these alleged crimes add to the context of violence and risk of retaliation in this case and further suggest that implied assurances of confidentiality were present.

Finally, Plaintiff cites a 1998 affidavit of Clayton L. Magruder, an FOIA Litigation Specialist of the DEA, for the proposition that violence was not present in this case. Mr. Magruder stated, in relevant part: "The investigative file does not report any acts of violence on the part of [P]laintiff during the perpetration of his criminal activities of heroin and cocaine distribution." Magruder Aff. at ¶ 62. However, the fact that reports of personal acts of violence by Plaintiff were absent from the DEA's investigative file does not negate the presence of implied assurances of confidentiality where, as here, Plaintiff was accused and convicted of being the head of an armed cocaine distribution conspiracy in Southeastern Michigan. Moreover, there is the fact, which was notably missing from Plaintiff's Response, that Mr. Magruder's affidavit continued on to state: "it could be anticipated that some form of retaliation or harassment among many members [of the operation], could have developed if it was known that their activities were being reported to the DEA. Due to the type of information which is provided by the sources and the fact that the *individuals are associates of [P]laintiff,* it is highly unlikely that the source would have provid-

ed information to the DEA other than under circumstances of implied confidentiality." Magruder Aff. at ¶ 62 (emphasis added).

Accordingly, the Government has complied with *Landano* and the Sixth Circuit's remand instructions: the DEA has provided adequate proof that its sources received assurances of confidentiality, either expressly or impliedly. Therefore, the DEA may properly withhold such information from Plaintiff pursuant to § 552(b)(7)(D).

### B. Segregability

■ The Sixth Circuit also remanded this case with respect to the EOUSA and the DEA on segregability grounds. FOIA requires that:

> *Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.* The amount of information deleted shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b) (emphasis added).

The Sixth Circuit characterized the importance of segregability in general and in this case as follows:

> Consistent with its aim of maximum disclosure, the FOIA requires disclosure of "any reasonably segregable" portion of a record that falls within one of the statute's exceptions. 5 U.S.C. § 552(b). In such cases, the redactions are to be indicated on the record produced to the requesting party. *Id.* The agency has the burden to show that portions withheld are not segregable from the dis-

closed material. *Davin,* 60 F.3d at 1052. Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure. *Krikorian v. [Dep't] of State,* 984 F.2d 461, 467 (D.C.Cir.1993) (quotations omitted). Rather, an agency must supply a relatively detailed justification and explain why materials withheld are not segregable. *Id.* (quotations omitted). A district court errs by approving the withholding of an entire document without entering a finding on segregability. *Church of Scientology of Cal. v. United States Dep't of the Army,* 611 F.2d 738, 744 (9th Cir.1979).

> [Plaintiff] urges that the district court erred in failing to require the EOUSA and the DEA to produce all reasonably segregable material in documents withheld in their entirety. Specifically, he objects to the agencies' conclusory assertions of nonsegregability and, because of the [G]overnment's alleged bad faith, seeks *in camera* review of these materials to assure compliance with the Act.

*Rugiero,* 257 F.3d at 553.

The Sixth Circuit then went on to point out the EOUSA's deficiencies in this area and to instruct this Court on how to police segregability in this case:

> With respect to the EOUSA's withholding in full of 821 pages of grand jury materials, the district court found that the *Vaughn* index identifies these documents as containing transcripts of witness testimony, exhibits, and other materials identifying witnesses. *Rugiero,* 35 F.Supp.2d at 984. As [the Government] point[s] out, this finding discharges the district court's obligations under the FOIA so far as these documents are concerned. The EOUSA, however,

withheld 888 pages in their entirety,[3] and the district court did not consider the segregability of the remaining documents. The *Vaughn* index indicates that the EOUSA's decision to withhold many documents in their entirety consists solely of a conclusory statement that they do not contain segregable material. By comparison, the index also lists some documents as containing responsive material that is "so intertwined with other third party and protected material as to be inextricable and nonsegregable." Nowhere does the EOUSA describe the process by which it determined that all reasonably segregable material had been released or state why some materials are not reasonably segregable. *See Davin*, 60 F.3d at 1052. Therefore, we remand Count IV to the district court for further proceedings to determine whether documents withheld in their entirety by the EOUSA contain material that can be reasonably segregated and disclosed. The district court retains discretion to decide whether to undertake this determination based on affidavits, *in camera* review, or some other procedure that strikes the appropriate balance between disclosure and protecting exempted materials.

*Id.*

With respect to the DEA's handling of segregability, the Sixth Circuit likewise held as follows:

Similarly, in response to [Plaintiff's] request, the DEA withheld 288 pages in their entirety and released 102 with re-

dactions.[4] The affidavit in support of the DEA's motion for summary judgment simply asserts that none of the withheld material is reasonably segregable. None of the attached supporting exhibits offers any additional explanation regarding segregability. Nor does the extensive *Vaughn* index suggest that the agency even considered the issue. Therefore, we also remand Count XI for the district court to determine whether any documents withheld in their entirety by the DEA contain segregable material that should be disclosed under the FOIA.

*Id.* at 554.

The Government responded to the Sixth Circuit's remand instructions with the affidavits of Ms. Wassom and Suzanne Little, Assistant Director of EOUSA's FOIA and Privacy Act Unit. The Government argues (1) that these two affidavits establish that the nonexempt information in the withheld documents is "so inextricably intertwined" with exempt information that only "meaningless words and phrases" would be disclosed by the redacted pages and/or (2) that the value of any intelligible nonexempt information is outweighed by the burden on the Government and the Court. Def. Br. at 10–11 (citing *Doherty v. United States Dep't of Justice*, 775 F.2d 49, 53 (2d Cir.1985); *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 322 n. 16 (D.C.Cir. 1982); *Neufeld v. Internal Revenue Serv.*, 646 F.2d 661, 666 (D.C.Cir.1981)).

---

**3.** As a result, 67 pages were initially at issue. However, the Government notes that because this Court previously ordered the EOUSA to release to Plaintiff one two-page document, with redactions, that was originally withheld in its entirety by the EOUSA, only 65 pages from the EOUSA remain at issue. *See* Def. Br. at 9 n.3.

**4.** The Sixth Circuit stated that the DEA identified 399 pages of responsive material, redacted 102 pages, and withheld 288 pages. However, the Government notes that while it is correct that the DEA identified 399 responsive pages, it released 100 pages in redacted form, not 102, and the DEA withheld 299 pages in their entirety, not 288 pages. *See* Def. Br. at 8–9 n.2.

In an ordinary case, the Court would be inclined to agree with the Government's argument. The Plaintiff, however, has convincingly argued that this is not an ordinary case, *see* Pl. Resp. Br. at 7–15, and the Court shall deny summary judgment on the segregability issue and conduct *in camera* review to determine if the pages at issue "contain material that can be reasonably segregated and disclosed to Plaintiff." *Rugiero,* 257 F.3d at 553–54. *Cf. Patterson v. Internal Revenue Serv.,* 56 F.3d 832, 839–40 (7th Cir.1995) (the Government not entitled to withhold an entire document if only "portions" contain exempt information); *Animal Legal Def. Fund, Inc. v. Dep't of Air Force,* 44 F.Supp.2d 295, 301 (D.D.C.1999) (the Government's motion for summary judgment denied, in part, on segregability grounds).

Attached to Ms. Little's affidavit are nineteen previously withheld pages from the EOUSA, with redactions, that were disclosed to Plaintiff after the Sixth Circuit's remand of this case. The Government argues that the release of these pages was "not required by law." Def. Br. at 11 n.4. Rather, the Government maintains that it disclosed these pages so as to provide an illustration to support the Government's contentions that the nonexempt information contained within the withheld documents is so inextricably intertwined with exempt information that only meaningless words and phrases would be disclosed by the redacted pages and/or that the value of any intelligible nonexempt information is outweighed by the burden on the Government and the Court. *See id.* Upon close review, however, these nineteen illustrative pages raise more problems than they solve.

First, the Court disagrees that the release of these pages was not required by law. As evidenced by the Government's conduct in disclosing these pages and by a review of the pages themselves, all nineteen pages clearly contain "reasonably segregable" information, as envisioned by § 552(b). For example, the EOUSA's Document 3 discloses an entire paragraph and significant portions of two additional paragraphs. Furthermore, most of these documents, including Documents 3, 5, 8, 9, 10, 12, 13, and 14, have more disclosed information on them than non-disclosed information. Moreover, the disclosed language is more than meaningless; the redacted pages are not limited to merely "of," "a," "the," and the like. FOIA unquestionably states that such reasonably segregable portions "shall" be disclosed. 5 U.S.C. § 552(b). Therefore, these pages were required by law to be released. Thus, because of the Government's contrary characterization of these documents, there is serious doubt about the accuracy of the Government's characterization of the remaining documents still being withheld in their entirety.

Second, the nineteen illustrative pages similarly cast serious doubt on the Government's argument that the nonexempt information in the withheld documents is so inextricably intertwined with exempt information that only meaningless words and phrases would be disclosed by the redacted pages. A prime example is Document 3, which is a letter from the United States Attorney of the Eastern District of Michigan to the Federal Bureau of Investigations discussing "jury tampering" in Plaintiff's criminal case. As Plaintiff points out, a significant claim in his § 2255 case concerns his attorney's failure to seek a hearing on improper jury contact. *See* Pl. Resp. Br. at 9. Plaintiff contends that Document 3, "even in its redacted form, concerns exactly the claim of improper jury contact;" further, Document 3 "is certainly intelligible" and does not merely contain meaningless words and phrases. *Id.* The Court agrees. Likewise, Documents 9 and

10 are letters concerning proposed plea agreements in Plaintiff's criminal case, and Plaintiff's § 2255 case includes claims regarding plea offers. *See id.* These documents also do not merely contain meaningless words and phrases. Furthermore, in its Reply Brief, the Government admits that Plaintiff's "point is well-taken" that these released redacted documents "are not reduced to meaningless words and phrases by the redactions." Def. Reply Br. at 3.

Also, with respect to the DEA, Ms. Wassom's affidavit frequently employs the "inextricably intertwined" defense to avoid disclosure of otherwise segregable information. *See, e.g.,* Wassom Aff. at ¶ 11, 66, 71, 74–76, 81, 84, 112, 137, 139–40. Nevertheless, Ms. Wassom includes numerous and extensive references to withheld pages that appear to contain substantial information about Plaintiff. For example, in Paragraph 66, Ms. Wassom states that information about Plaintiff "is found in four paragraphs on page '147' [and] in four paragraphs on page '148.'" *Id.* at ¶ 66. Similarly in Paragraph 74, she states that information about Plaintiff is found in

> three paragraphs on page "171", in six paragraphs on page "172", in three paragraphs on page "173", in one paragraph on page "174", and in two paragraphs on page "175".

*Id.* at ¶ 74. *See also id.* at ¶ 71, 75–76, 81, 84, 112, 137, 139–40; Pl. Resp. Br. at 11–12. In this case, such pages containing multiple references to Plaintiff should be reviewed by the Court to determine if they should be released to Plaintiff with redactions.

As a result, the Court is not convinced, for summary judgment purposes, by the affidavits that the nonexempt information in the Government's remaining withheld documents is so inextricably intertwined with exempt information that only mean-

ingless words and phrases would be disclosed by the redacted pages.

Third, the Court also disagrees with the Government's alternate argument that the value any intelligible nonexempt information is outweighed by the burden on the agency and the Court. As to the value issue, the significant value of this information to Plaintiff and his § 2255 case is beyond question, as discussed in the preceding paragraphs. *See also* Pl. Resp. Br. at 12 (determination of the information's value "rests not with Defendant, but with Plaintiff").

As to the burden issue, the Government cites to the *Neufeld* case for the proposition that segregation is not required when it "would impose significant costs on the agency and produce an edited document of little information value." Def. Br. at 11 (citing *Neufeld,* 646 F.2d at 666). However, the holding in *Neufeld* was: *"Only if exempt and nonexempt information are 'inextricably intertwined' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value, may the court allow an entire document to be withheld."* 646 F.2d at 666 (emphasis added). Here, as stated above, the Government has not adequately proved that the exempt and nonexempt information are inextricably intertwined; thus, *Neufeld* does not advance the Government's case. The Government's argument is further undermined by the fact that the district court in *Neufeld* held that the information at issue was inextricably intertwined only *after* conducting *in camera* review. *See id.* at 663 n. 7, 664.

The Government also cites the *Yeager* case to argue that it is appropriate to consider the intelligibility of a document and the burden imposed by segregating the nonexempt information. *See* Def. Br. at 11 (citing *Yeager,* 678 F.2d at 322 n. 16). Yet *Yeager* came to no conclusion on the

burden issue: "we do not decide what impact, if any, the extent of the burden on an agency may have on such a duty." 678 F.2d at 322 n. 16.

Nevertheless, in light of other relevant case law, it is important to address the burden that segregation may impose on the Government. *See Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1038–39 (7th Cir.1998) (finding that because agency would require eight work-years to identify all nonexempt documents in millions of pages of files, the very small percentage of documents that could be released were not "reasonably segregable"); *Lead Indus. Ass'n v. Occupational Safety & Health Admin.,* 610 F.2d 70, 86 (2d Cir.1979) ("[I]f the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not 'reasonably segregable,' under the final clause of § 552(b)." (citing *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 260–61 n. 23 (D.C.Cir.1977))); *cf. Willamette Indus., Inc. v. United States,* 689 F.2d 865, 868 (9th Cir.1982) ("[L]arge costs of editing cannot per se make the request unreasonable." (citation omitted)).

In this case, the burden of segregation does not outweigh the significant value of the information to Plaintiff because it does not appear that the Government would have to expend a large amount of additional time and resources to provide Plaintiff with the segregable information. For example, unlike the *Solar Sources* case, here the Government is not faced with segregating information from millions pages but rather only from some 364 pages. *See* 142 F.3d at 1038–39; *supra* notes 3–4. Further, at the bottom of each of the nineteen illustrative pages there is a notation which includes three items: (1) what appears to be someone's initials, (2) the FOIA exemptions claimed on that page, and (3) the date of August 24, 2001. These notations tend to indicate that the Government has *already* expended the time and resources necessary to determine the segregability of the withheld pages. This conclusion is confirmed in Ms. Little's affidavit; in discussing Document 15 for example, she states: "The document *was reviewed line-by-line* to determine if any information could be segregated and release." Little Aff. at ¶ 20 (emphasis added). Further, Ms. Little also declared "In compliance with the Court of Appeals order, I conducted a *detailed review* of the . . . records withheld in full by EOUSA." *Id.* at ¶ 4 (emphasis added). Ms. Wassom made similar statements as well. *See* Wassom Aff. at ¶ 2–4. Thus, the future burden of segregation on the Government appears to be minor and does not outweigh the significant value of the information to Plaintiff.

Fourth, the nineteen illustrative pages also create doubt about the Government's handling of the segregability issue because of the apparent reversal in the Government's position on releasing many of these documents. In addition to being attached to the Government's brief as exhibits, these nineteen pages were released to Plaintiff on March 5, 2002. Prior to that date, the Government maintained that Documents 4, 6, 7, 8, 9, 10, and 12 were either "found" or "deemed" to be nonsegregable. *See* Pl. Resp. Br. at 7–8 (citing EOUSA's original *Vaughn* index). Likewise, Documents 5, 13, and 14 were previously found to be "so intertwined" with exempt information "as to be too inextricable." *See id.* Despite these prior assertions, the Government released these segregated pages. This apparent reversal raises doubt about the accuracy of the Government's handling of the documents still being withheld from Plaintiff in their entirety.

Thus, while the Government's affidavits may arguably meet the requirements of the Sixth Circuit's remand instructions, the Plaintiff has raised enough doubt for the Court to deny summary judgment on the segregability issue. *See Lucas,* 738 F.Supp. at 217. Therefore, the Court shall move cautiously and not grant summary judgment; rather, the Court shall proceed to *in camera* review, pursuant to § 552(a)(4)(B).

"[T]he decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'" *Spirko v. United States Postal Serv.,* 147 F.3d 992, 996 (D.C.Cir.1998) (quoting *Lam Lek Chong v. Drug Enforcement Admin.,* 929 F.2d 729, 735 (D.C.Cir.1991) (quoting *Carter v. United States Dep't of Commerce,* 830 F.2d 388, 392 (D.C.Cir.1987))) (citing *Quinon v. Fed. Bureau of Investigations,* 86 F.3d 1222, 1227 (D.C.Cir.1996); *Ctr. for Auto Safety v. Envtl. Prot. Agency,* 731 F.2d 16, 25 (D.C.Cir.1984)); *see also Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) ("The *in camera* review provision is discretionary by its terms"); *Ingle v. Dep't of Justice,* 698 F.2d 259, 267 (6th Cir.1983).

Here, *in camera* review is appropriate due to the reasons set forth in the above discussion of segregability, the fact that Plaintiff has requested *in camera* review, the history of this litigation, and the Sixth Circuit's subtle encouragement to utilize *in camera* review in this case, *see* 257 F.3d at 543–44, 553–54. In short, the Court believes that *in camera* inspection is necessary to make a responsible determination

of the Government's compliance with FOIA. *See Pons v. United States Customs Serv.,* No. 93–2094, 1998 U.S. Dist. LEXIS 6084, at *4 (D.D.C. Apr. 23, 1998) (citing *Carter,* 830 F.2d at 392; *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978)).[5]

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the Government's Supplemental Motion for Summary Judgment [docket entry 63] is **GRANTED IN PART** and **DENIED IN PART**. On the first issue presented in regards to Count XI of whether the DEA properly withheld confidential source information pursuant to 5 U.S.C. § 552(b)(7)(D), summary judgment is granted. On the second issue presented in regards to Count IV and XI of whether the EOUSA and the DEA have met their burden with respect to showing non-segregability of the withheld documents, summary judgment is denied.

**IT IS FURTHER ORDERED** that within **NINETY (90) DAYS** of the entry of this Order, the Government shall provide the Court with **ALL PAGES** withheld from Plaintiff in their entirety by the EOUSA and the DEA, excluding the 821 pages of grand jury materials, for the purposes of *in camera* review, pursuant to 5 U.S.C. § 552(a)(4)(B), to determine if these pages "contain material that can be reasonably segregated and disclosed to Plaintiff." *Rugiero,* 257 F.3d at 553–54.

**SO ORDERED.**

---

**5.** The Court finally notes that the Government cited to *Doherty,* 775 F.2d at 53, which stated: "The fact that there may be some nonexempt matter in documents which are predominantly exempt does not require the district court to undertake the burdensome task of analyzing approximately 300 pages of documents,

line-by-line." The Court appreciates the Government's concern about the burden on the Court; nevertheless, for the reasons set forth in the text accompanying this footnote, the Court strongly believes it must exercise its discretion under § 552(b) at this time and conduct *in camera* review.